514 A.2d 276

Appeal of Jerome Tieger from Decision of Springfield Township Zoning Board of Adjustment. Jerome Tieger, Appellant.

Argued April 11, 1986, before Judges BARRY and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Joseph M. Gindhart,* with him, *Pamela B. Gagne, Marshall, Dennehey, Warner, Coleman & Goggin,* for appellant.

*Robert O. Baldi, Baldi & Cepparulo, P.C.,* for appellees.

*Thomas M. Garrity,* with him, *Thomas F. Oeste, Wisler, Pearlstine, Talone, Craig & Garrity,* for intervenor, Springfield Township.

OPINION BY JUDGE BARRY, August 25, 1986:

This is an appeal by Jerome Tieger, appellant, from an order of the Montgomery County Court of Common Pleas affirming the decision of the Springfield Township Zoning Board of Adjustment (Board) denying his application for a special exception to convert a building on his property to a multiple family dwelling.

Upon appellant's application for a special exception under Sections 114-133 and 114-41E of the Zoning Code of Springfield Township (Springfield Code), the Board made the following factual findings:

1. The property contains some 70,700 square feet with a house, an apartment and a barn, all connected physically but the barn portion of which is separated from the rest of the structure by a wall of some 18".

2. The Structures may have some historical property listed on the National Register.

3. The owner applicant intends to convert the barn portion into five separate and independent two story living quarters for immediate rental and possible future condominium division.

4. The applicant asks that the Board grant a special exception under Section 114-133 of the Code.

5. In addition, applicant asks for a special exception under Section 114-41E for permission to establish a professional office within the present residence for himself to conduct his business as a consultant mechanical engineer.

6. The development of this property into five individual living units would have no adverse ef-

fect on the utilities supplying the property or have a serious effect on the traffic in the vicinity.

7. There was to be no structural changes to the building with all exterior construction to remain the same.

8. The testimony further established that the applicant paid approximately $140,000 for the property in December of 1983, and several witnesses for the opponents made it clear that the property has at least that value for a single family use. This was established through the testimony of Richard Schilling who stated that he had looked at the property on seven different occasions and had been willing to offer that amount. The offer was not made because the realtor advised that an offer of $155,000 had been turned down.

The Board denied appellant's application under Section 114-133 on the ground that appellant failed to prove that the building to be converted was a "dwelling" and that it had little economic value or usefulness as a single family dwelling.[1]

At issue was the following Section of the Zoning Ordinance:

Section 114-133: Dwellings.

A. Conversion of dwelling to multiple-family use. The Zoning Hearing Board may authorize, as a special exception, the conversion of any dwelling existing at the effective date of this Ar-

---

[1] The Board granted appellant's request under Section 114-41E approving the use of a portion of the dwelling unit for a professional office. This section provides for the use of property for a professional office when authorized by a special exception in an AA residence district. The Board granted this use only on the condition that the appellant use it specifically in his capacity as a mechanical engineer, a use provided for under the Springfield Code.

ticle on a designated lot, into a dwelling for a greater number of families than is permitted by the district regulations in AA, A and B Residence Districts, subject to the following requirements:

(1) The lot area per family shall not be reduced to less than fifteen thousand (15,000) square feet in the AA Residence District; eight thousand (8,000) square feet in the A Residence District; and five thousand (5,000) square feet in the B Residence District.

(2) The yard, building area and other applicable requirements for the District shall not be reduced.

(3) No major structural alteration of the building exterior shall be made except as may be necessary for purposes of sanitation or safety.

(4) Such conversion shall be authorized only for a *building* which has relatively little economic value or usefulness as a single-family dwelling or *other conforming use.* (Emphasis added.)

Appellant argues that since the term "dwelling" as used in Section 114-133 is not defined in the Springfield Code, the term must be used in its broadest sense, which, appellant urges, would include the farmhouse and the other buildings. He attempts to bolster this position by referring to Sub-Sections 114-113 A (3) and (4) of the Springfield Code which use the broader term "building".

He contends further that the Board misinterpreted Sub-Section (4) both by failing to find that the farmhouse was a conforming use under the concluding language of Sub-Section (4), "other conforming use," and by failing to read this provision in conjunction with Section 114-141 of the Springfield Code[2] which, he main-

---

[2] Section 114-141, *Permitted Uses,* provides as follows:

tains, lists his property as a permissible accessory use to a conforming use, the farmhouse; and by reading the term "little economic value or usefulness" as meaning "little economic value *and* usefulness" thus imposing a greater burden on him than is required under Sub-Section (4). Appellant alleges that the Board erred by accepting the testimony of a nonexpert on the question of his property's economic value and by, contrary to established case law, denying the application without a finding that the proposed use would constitute a detriment to public health, safety or welfare. He also requests that we find the trial court's grant of intervention to Springfield Township improper.

Initially, we note that when the trial court takes no additional evidence our scope of review is limited to determining whether the Board committed an error of law or an abuse of discretion and whether its findings are supported by substantial evidence. *Jones v. Township of North Huntingdon Zoning Hearing Board,* 78 Pa. Commonwealth Ct. 505, 467 A.2d 1206 (1983).

A review of the trial court opinion reveals that the court, in analyzing the decision by the Board, painstakingly applied the principles of Statutory Construction Act of 1972 (Act), 1 Pa. C.S.A. §1501-1991, specifically the provisions relating to the priority of particular words over general words.[3] It concluded, as did the Board,

---

A building may be erected, altered or used in a lot[,] or premises may be used for any of the following purposes and for no other:
A. Single-family detached dwelling.
B. Churches or Chapels, including residence for immediate staff when authorized as a special exception.

*Id.*

[3] *See* Section 1903 of the Act, Pa. C. S. §1903, which reads:
§1903. *Words and Phrases*
(a) Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate mean-

that the term "dwelling" was a restrictive term, that it could not be interpreted broadly to include dairy barns, and that it is not expanded by the subsequently used term "building". The trial court, in conducting its analysis of the Springfield Code's language, put emphasis on the title and the wording of the introductory paragraph of the conversion provisions of the code which makes reference to "dwelling" several times. *See* Section 1924 of the Act, 1 Pa. C. S. Section 1924.

We find no error in this reading of these provisions and will uphold the court's findings. The language clearly evidences an intent to restrict conversions to dwellings and not accessory buildings.

The court did not address appellant's remaining contentions, reasoning that a decision in favor of the Board on the issue on whether the term "dwelling" could be expanded to include the structure in question was dispositive. We will address the appellant's remaining arguments.

The appellant next asks that we find the Board in error for narrowly reading Section 114-133 A(4) to "exclude the conversion of attached barn to multiple-family use". *Brief for Appellant* at 11. We find no merit in this argument. The Board was never asked to consider whether the structure in question was a conforming use nor was there evidence presented to show that it had little economic value or usefulness as a conforming use. Similarly, we disagree that the Board erred when it applied Sub-Section (4) by interpreting it to mean "little economic value *and* usefulness" rather than "little economic value *or* usefulness". The appellant himself

---

ing or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

(b) General words shall be construed to take their meanings and be restricted by preceding particular words.

*Id*.

points out that he is under a duty to prove that he has complied with all the objective requirements of the code:

> [T]he applicant for a special exception has both the duty of presenting evidence and the burden of persuading the competent tribunal that his proposal complies with all objective requirements of the ordinance . . . ;

*Brief for Appellant* at 11 (citing *Robinson Township v. Westinghouse Broadcasting Company*, 63 Pa. Commonwealth Ct. 510, 440 A.2d 642 (1981)). Appellant carries the burden of proving that this structure has "no economic value or usefulness". The record shows that he provided no evidence of the property's economic value or usefulness as either a single-family dwelling or a conforming use. The township presented testimony by a neighboring landowner who, at one point, was interested in purchasing the property but was informed by a local realtor that an offer of $155,000 had been rejected by the previous owners. In addition, the Board considered the testimony of the appellant's son who testified that the purchase price was approximately $140,000. Appellant now argues in his brief that "it cannot be contested that the large dairy barn, which is now situated on a 1.6 acre lot in a residential district, has no usefulness as a barn. It also has no use as a single-family residence as it is 8,000 square feet. There are no 8,000 square feet single-family residences being built today. Thus, Mr. Tieger met this burden. . . ." *Brief for Appellant* at 12. This conclusionary statement does not direct itself to whether appellant presented actual evidence to the Board to prove compliance with Sub-Section (4). The record shows that he did not. The testimony of the neighboring landowner and appellant's son was the *only* evidence of record relative to economic value. Appellant maintains that the Board's acceptance

of this non-expert testimony and its failure to base its "economic value" determination on independent appraisals constituted reversible error. Of course the Board was under no duty to establish anything. It was incumbent upon appellant to establish economic value or usefulness. We cannot accept appellant's suggestion that in its failure to produce evidence to meet his burden, the Board must refrain from making this determination or make one favorable to appellant. The Board made the only determination it could have given under the evidence presented.

In *Evans v. Zoning Hearing Board,* 40 Pa. Commonwealth Ct. 103, 108, 396 A.2d 889, 892 (1980), we said:

It is well established that *once the applicant for a special exception proves that the proposed use is one permitted by the zoning ordinance,* he is entitled to a special exception unless the protestant proves that the requested use would constitute a detriment to public health, safety or welfare.

*Id.* at 108, 396 A.2d at 892 (emphasis added). Inasmuch as appellant has failed to prove that the proposed conversion is one permitted by the Springfield Code, we need not address his argument that he is entitled to a special exception under *Evans.*

Finally, appellant argues that the trial court erred by permitting the Township of Springfield to intervene because it did not file its petition within the 30 day statutory period designated by Section 1009 of the Pa. Municipalities Planning Code (Code), Act of July 31, 1968, P.L. 805, 53 P.S. §11009. In *Grove v. Zoning Hearing Board of Thornberry Township,* 40 Pa. Commonwealth Ct. 47, 397 A.2d 22 (1979), we held that since the Township had intervened within the 30 day period under Section 1009, its intervention was proper,

regardless of whether it possessed a valid interest in need of protection. We also found, however, that the trial court acted properly in permitting a landowner with a valid interest to intervene despite the fact that his notice to intervene was not timely under Section 1009. In addition to setting a thirty-day limit for filing the notice to intervene, Section 1009 provides that "all other intervention shall be governed by the Rules of Civil Procedure". Pa. R.C.P. No. 2327(4) permits, at any time, the intervention of a party who has a legally enforceable interest. Springfield Township is, under Rule 2327(3) a person who could have joined as an original party in the action. *See* Section 908 of the Code, 53 P.S. §11009. Thus, the township was eligible to intervene under Pa. R.C.P. No. 2327(4). Accordingly, we find the trial court did not err in granting Springfield Township's petition to intervene.

We hold that the Springfield Township Zoning Board of Adjustment properly denied appellant's application for special exceptions and affirm the trial court.

## ORDER

Now, August 25, 1986, the order of the Montgomery County Court of Common Pleas, No. 84-07524, dated December 21, 1984, affirming the Springfield Township Zoning Board of Adjustment, is affirmed.